EDWARD B. LYCAN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield  October 1, 1883.*

1. INDICTMENT—*sufficiency of count for embezzlement.* A count in an indictment charging that the defendant, as the agent of the prosecutor, by virtue of his employment, received moneys of the prosecutor, stating the amount, which he did feloniously embezzle and fraudulently convert to his own use, with intent to steal the same, without the consent of the owner, is substantially good as a count for embezzlement, under the statute.

2. CRIMINAL PRACTICE—*remarks of judge on the evidence.* On the trial of one for the embezzlement of money alleged to have come into his hands on a sale of property by him, as agent of the prosecutor, where the evidence on the part of the People was not of a very satisfactory character, the defendant offered testimony to show, and tending to show, that he had bought the property of the prosecutor, the proceeds of which he was charged

of having embezzled, and that the purchase was in good faith, and that he had paid for the same, after which the court remarked, in the hearing of the jury, "I am not satisfied with this,—let the defendant take the stand," and then asked questions not entirely free from objection: *Held,* that the remark was clearly improper, and was calculated to prejudice the defence the accused was attempting to make.

3. Whether a court is satisfied or not, is not a matter proper to be communicated to the jury in such a case. They should be left free to consider the evidence given by both parties, without any expression of opinion from the court.

4. PRACTICE—*directing witnesses to be recalled.* The court has the discretionary right, in the progress of a trial,—the exercise of which may tend to elicit the truth,—to direct that witnesses shall be recalled for further examination, or that other witnesses may be called to the stand to be examined; but the court ought not to give expression, in the hearing of the jury, as to its own views of the weight of any portion of the evidence.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding.

This was an indictment against the plaintiff in error, for embezzlement. The indictment is substantially as follows, omitting formal parts:

*First count:* That Lycan, on, etc., "being then and there the agent of Ellen Wilkes, did then and there, by virtue of his said employment, have, receive and take into his possession certain money to a large amount, to-wit, to the amount of $600, and of the value of $600, of the property and moneys of said Ellen Wilkes, the said L.'s said employer, and the said L. the said money then and there feloniously did embezzle and fraudulently convert to his own use, with intent then and there to steal the same, without the consent of the said Ellen Wilkes, the said L.'s said employer, whereby, by force of the statute in such case made and provided, the said L. is deemed to have committed the crime of larceny, and so the jurors aforesaid, upon their oaths aforesaid, do say that the said L. then and there, in manner aforesaid, the said money of the property and moneys of the said Ellen Wilkes, the said L.'s

said employer, from the said Ellen Wilkes did then and there feloniously steal, take and carry away, contrary," etc.

*Second count:*  That the said L., on, etc., "fraudulently and feloniously did embezzle and convert to his own use, with intent to steal the same, $600 in money, and of the value of $600, of the money and property of one Ellen Wilkes, without then and there having the consent of the said Ellen Wilkes, and so the jurors aforesaid, on their oaths aforesaid, do say that the said L. then and there, in manner and form aforesaid, the said money, the property of the said Ellen Wilkes, from the said Ellen Wilkes feloniously did steal, take and carry away, contrary," etc.

A plea of not guilty was entered, and a trial was had, resulting in a verdict of guilty, and finding the value of the property at $300, and fixing the defendant's punishment at three years imprisonment in the penitentiary.  A motion for a new trial was made, and overruled.  The court also overruled a motion in arrest of judgment, and sentenced the defendant to confinement in the penitentiary at hard labor for three years.

Helen Wilkes testified on the trial that she was as well known by the name of Ellen as any other; that soon after her husband's death, in 1881, she gave Newton Matthews a mortgage on fourteen cows, one bull, two horses, wagon and harness, two mules, wagon and harness, household furniture, etc., and lumber worth about $100, to secure a note for $600, due in two years; that she owed Matthews nothing, but the mortgage was given to prevent her property from being taken for her husband's debts; that she had possession until June 5, 1882, when Matthews sold under the mortgage; that before the sale it was understood that defendant was to buy the property for her; that he did buy all the property and take possession, paying Matthews nothing; that defendant sold part under her orders, and part contrary; that the property was worth about $1300, and that he said he received something

like that; that he paid a mortgage on a pair of horses for $85, and gave her about $150 in small amounts, and that she asked defendant for her money, when he said he had used it. She further testified that the defendant was to buy in the property for her, and act as her agent, and sell it out, and turn the proceeds over to her.

Newton Matthews testified that the mortgage was given to him to cover up the property from Mrs. Wilkes' creditors; that it was arranged that defendant was to buy the property in and turn the money over to Mrs. Wilkes, and that the aggregate amount of the sale was $426.

The defendant testified that he bought of Mrs. Wilkes first a pair of mules, wagon and harness, for $150, which he paid her; that she wanted him to buy her cattle at $600; that he offered her $400, which she finally took, and that he paid $300 on the cattle at the time, and afterwards paid her the other $100, both payments being made in the presence of his brother. She afterwards sold him a pair of horses, subject to a mortgage of .$85, for $15, and that the property was not worth more than he paid. He also testified that after this purchase she informed him of the Matthews mortgage, but said she owed him nothing; that it was given to defeat the collection of a judgment; that he, at her request, went to Matthews' office, when she told Matthews that part of the cattle had been levied on; that Matthews said he would get them for defendant, and sell them, under his mortgage, to defendant.

There was other evidence substantiating that of the defendant in many respects, especially as to defendant's purchase and payment for the property, at the conclusion of which the court remarked: "I am not satisfied with this,—let the defendant take the stand," which he did.

By the court: "If you bought this property and paid for it, why did you have Matthews sell it under the mortgage, and you buy it in?

A. "Well, he said it would make me safe, and they could not take the property.

By the court: "Did you not know that if you bought and paid for the property you could hold it?

A. "No, I did as Matthews said. He was a lawyer, and I followed his advice."

To which action and remark of the court the defendant objected and excepted.

Messrs. FOSTER & RAUM, for the plaintiff in error.

Mr. JAMES McCARTNEY, Attorney General, for the People.

Per CURIAM: No serious objection is perceived to either count of the indictment. Both counts charge defendant with the statutory crime of embezzlement, and are sufficiently formal under the statute. The fiduciary relation between defendant and the prosecuting witness is stated so it can be readily understood, and under the statute of this State that is all that is required. It follows a general verdict of guilty would be correct if the evidence warranted it.

The facts implicating the accused arise out of a very questionable transaction between the prosecuting witness and her legal adviser. Indeed, the transaction, so far as they are concerned, is confessedly illegal. On this account the evidence given for the People was not of a very satisfactory character. To rebut the case made by the prosecution, defendant offered testimony to show he had bought the property of the prosecuting witness,—the proceeds of the sale of which he was accused of embezzling; that the purchase was in good faith, and that he had paid for the same with money. On examination it is seen the testimony offered and given did tend to establish this defence, but what weight should be given to it was, of course, for the jury to determine. Had the jury been left free to decide that question, their verdict, no doubt, would have been regarded as conclusive; but after the

introduction of the evidence on this branch of the case, the court remarked, in the presence and hearing of the jury, "I am not satisfied with this,—let the defendant take the stand." This remark was clearly improper, and was calculated to prejudice the defence the accused was attempting to make. Whether the court was satisfied or not, was not a matter proper to be communicated to the jury. They should have been left free to consider the evidence given by both parties, without any expression of opinion from the court. Undoubtedly the court has the discretionary right,—the exercise of which may tend to elicit the truth,—to direct that witnesses shall be recalled for further examination, or that other witnesses may be called to the stand to be examined; but the court ought not to state to the jury that it is or is not satisfied with any particular portion of the evidence. Expressions of that character are calculated to have great weight, and if the jury are to be controlled in that way, their services might as well be dispensed with in the first instance. It will also be seen, on examination, that the questions propounded to defendant by the court when he was compelled to take the stand again, are not altogether free from objection, although not seriously objectionable. The impression they seem to make on the mind is, that they call rather for the thoughts of defendant than for anything he said or did. It must be understood the defence was made in good faith. The testimony relied on to establish it was given under the sanction of an oath. The examination of defendant by the court was, in some degree at least, calculated to cast suspicion upon it, and it could not be otherwise than prejudicial to the defence insisted upon.

On account of the errors indicated, the judgment will be reversed and the cause remanded, that the accused may have a new trial.

*Judgment reversed.*