424 A.2d 914

**COMMONWEALTH of Pennsylvania**

v.

**Michael D. KRAJCI, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed Jan. 9, 1981.

Malcolm W. Berkowitz, Philadelphia, for appellant.

Ellen Mattleman, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence for robbery, criminal conspiracy, and possession of an instrument of crime.

On July 19, 1977, at approximately 9:30 a. m., Marcelo's Pharmacy in Philadelphia was robbed by two armed men. At least two hundred dollars was stolen, as well as quantities of dilaudid, percodan, desoxyn, quaalude, and valium. A principal issue at trial was whether appellant was one of the robbers.

Edmund Marcelo testified that appellant and one Daniel Cronin were the robbers. He also testified that several days after the robbery, he had identified appellant's photograph in a photo array, and that on August 17, 1977, he had identified appellant in a line-up. Marcelo said that during the robbery he was able to observe appellant for three minutes at a distance of three feet in good lighting while appellant was holding a gun on him, and that he remembered appellant's clothing and physical characteristics.

James Dunlevy, a postman, testified as follows. He walked into Marcelo's Pharmacy at the time of the robbery and was approached by Cronin, who pointed a silver revolver at his head and conducted him to the rear of the store, where he was forced to lie on the floor facing the wall. He remained in that position for five to six minutes until the robbery was over and the robbers had fled. During the robbery, Dunlevy saw only Cronin and one of Marcelo's children; he was therefore unable to identify appellant as one of the robbers. Several months after the robbery, Dunlevy identified Cronin's photograph and a photograph of the revolver used by Cronin.

No other eyewitnesses to the robbery testified.[1] Detective McNamee testified to the investigation that occurred immediately after the robbery. Detectives Henwood and Cashman testified to subsequent investigations that occurred, including their observation of appellant on the evening of the robbery wearing a full beard and mustache, and the search of appellant's residence on July 21, 1977, which search uncovered no incriminating evidence. Detective Caruso testified that on August 5, 1977, appellant was arrested when he went to a hospital in Bucks County to fill a drug prescription, and that when arrested, appellant was clean-shaven. Detective Margulis testified to the circumstances surrounding Marcelo's line-up identification of appellant.

Of appellant's numerous arguments in support of a new trial, we need address but one.[2]

1. Marcelo's two children (ages 12 and 13) were in the pharmacy at the time of the robbery, but were not called at trial. Instead, Detectives Henwood and Cashman testified that on July 20 the children identified appellant's photograph in a photo array. (We are unable to determine precisely what Detective Henwood's testimony was because the transcript of his testimony, for some reason, is not included in the record that was transmitted to us by the lower court.) The district attorney evidently believed that he was not required to call the children to the stand because he had offered to make them available for appellant to call. *See* N.T. 1/24/78 at 130; N.T. 1/26/78 at 46–47. The soundness of the district attorney's belief is questionable. The children were not in fact in the courtroom during Henwood's and Cashman's testimony, and thus were physically unavailable for immediate cross-examination by appellant. *See generally Commonwealth v. Sanders*, 260 Pa.Super. 358, 394 A.2d 591 (1978); *Commonwealth v. Dugan*, 252 Pa.Super. 377, 382, 381 A.2d 967, 970 (1977) (SPAETH, J., concurring); *Commonwealth v. Hill*, 237 Pa.Super. 543, 353 A.2d 870 (1975); McCormick, Evidence § 251 at 603 (Cleary ed. 1972); *see also Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302 (1978); *Commonwealth v. Rossetti*, 255 Pa.Super. 524, 388 A.2d 1090 (1978). Moreover, the Commonwealth has cited no authority for the proposition that Henwood and Cashman could testify to the out-of-court identifications by Marcelo's children before the children themselves testified.

2. Because of our decision *infra*, we do not consider appellant's arguments that he is entitled to a new trial because the lower court 1) did not suppress Marcelo's identifications; 2) ruled that appellant's prior convictions could be used to impeach him; 3) denied appellant's application for a bill of particulars; 4) allowed the Commonwealth to amend the informations two days before trial; 5)

During his cross-examination of James Dunlevy, the postman who walked into the pharmacy at the time of the robbery, appellant's counsel asked that the photograph of Cronin's revolver, which Dunlevy had been shown after the robbery, be produced. The district attorney said that the photograph was not in his possession, but the court stated that it should be produced. The next day the district attorney called to the stand Officer Loub of the Collingswood, New Jersey, Police Department. Over appellant's objection, the officer was permitted to testify as follows. On November 5, 1977, he stopped a motorist, who was later identified as Cronin, because his car was carrying an invalid inspection sticker. Cronin was the only person in the car. When asked for identification, Cronin produced a Pennsylvania operator's license and a New Jersey car registration, both in the name of Richard Noble. Loub then asked for additional identification, explaining to Cronin that he wished to run a check to learn if Richard Noble had a revoked New Jersey operator's license. When Cronin began to reach into a gym bag that was inside the car, Loub told him to remove his hand from the bag and to face him. Cronin, however, continued to look over his shoulder to see Loub's position. Loub became alarmed and placed his hand on Cronin's back, saying, "Take your hands out of the bag." Cronin said he was getting his identification, but when he turned he had a metal object in his hand. Loub grabbed Cronin's wrist, but Cronin broke the wrist free and held the object, which Loub now recognized as a gun, in Loub's face. Loub quickly snapped Cronin's hand against the roof of the car and hit Cronin on the head with a flashlight. Cronin and Loub then

instructed the jury that the trial judge was "the law"; 6) refused to declare a mistrial after Marcelo and the district attorney referred to appellant's mugshots; 7) allowed the jury to observe a slide of a line-up that showed appellant dressed in prison garb; and 8) failed to discharge the jury when it informed the court that its deliberations were "hopelessly deadlocked." Nor do we consider appellant's allegations of prosecutorial misconduct and erroneous evidentiary rulings other than those specifically discussed *infra*. Appellant has also argued that he should be discharged because the evidence was insufficient to support his convictions. We have considered this argument, and have found it without merit.

wrestled, each trying to overpower the other. Eventually, Loub was able to reach his own gun, and placed it against Cronin's head. Loub warned Cronin to drop his gun, but Cronin continued fighting, slapping the gun from his head. Loub shot twice. One bullet struck Cronin's neck, the second his head. When Cronin fell, he was dead.

Following this recitation, Officer Loub was asked by the district attorney to identify certain photographs that had been taken in connection with the shooting of Cronin. The first photograph showed Cronin lying on the pavement beside a car. A dark stream of what appeared to be blood was flowing from his head, and a gun lay nearby. The second photograph focused on the gun lying beside Cronin's body. The third photograph, which apparently was taken at a different time and place than the shooting, showed Cronin's gun on a table next to a ruler. The fourth photograph, the only one in color, portrayed Cronin's face and torso after the shooting; partially dried blood appeared on Cronin's forehead, neck, and right nostril.[3]

After appellant's counsel had cross-examined Officer Loub, the Commonwealth recalled Dunlevy. Dunlevy identified the gun depicted in the third photograph as lying beside a ruler as the gun that Cronin had used in the robbery. He also identified the color photograph of Cronin. All four photographs were shown to the jury, although they did not go out with the jury during its deliberations. N.T. 1/26/78 at 91, 97–98.[3a]

---

**3.** Loub also identified a fifth photograph—a mugshot of Cronin taken on May 12, 1971. The description in the text of the photographs is based on the photographs themselves, which are part of the record before us on appeal. It has been suggested to us that the jury did not actually see the photographs. Regarding this suggestion, *see* note 3a *infra.*

**3a.** The following interchange appears in the notes of testimony:
Mr. Berkowitz: You're not going to let the photographs of Cronin with the bullet in his head go out with the jury, will you? The Court: Of course not. We'll come to the exhibits, but I don't think any exhibits will go out. *They've been shown to the jury.* N.T. 1/26/78 at 91 (emphasis added).

494

As mentioned, Officer Loub testified over appellant's counsel's objection; the only part of the testimony to which counsel did not object was when Loub stated that on November 15, 1977, he apprehended Cronin in New Jersey, and as a result recovered a gun that was photographed, which photograph was being offered as a Commonwealth exhibit. *E. g.*, N.T. 1/25/78 at 28–29, 32–34, 47, 49. Counsel also objected to the introduction of the three photographs taken at the scene, *i. e.*, the photograph of Cronin lying by the car, the photograph focusing on the gun beside Cronin's body, and the photograph of Cronin's face and torso, on the ground that they were irrelevant and inflammatory. *E. g.*, N.T. 1/25/78 at 40.

■ In determining whether the lower court erred in allowing Officer Loub to testify to the circumstances of Cronin's apprehension and death, and admitting into evidence the photographs connected with Loub's testimony, we

After our opinion in this case was first filed, we received separate written communications from the lower court and from defense counsel stating that the court's answer to counsel's question above notwithstanding, "the photographs of Cronin with the bullet in his head" were not shown to the jury. However, our decision does not depend on the jury's actually having seen the photographs. At trial, defense counsel objected to the entire line of testimony by Officer Loub concerning the circumstances of Cronin's death and also to the introduction of the photographs into evidence. As noted in the text, *supra*, Officer Loub first described the struggle in which Cronin was killed by a shot from a gun placed against his head; he then identified each photograph. Following this testimony, Dunlevy was asked to identify the color photograph of Cronin, and he prefaced his identification by saying, "Well, I can tell you who it resembles. It's pretty hard to tell somebody when he's been shot through the head." N.T. 1/25/78 at 64. In our discussion below of the balance between relevance and prejudice, *see infra* at 918, we consider the marginal relevance of Loub's testimony as to the details of Cronin's death as compared with the substantial prejudice arising from that testimony. We also note the prejudice created by the district attorney's exploitation of Loub's testimony in his closing argument. *See infra* at 918–919. If we assume that the jury did not actually see the photographs, the prejudice to appellant from Officer Loub's testimony and the district attorney's closing argument would nevertheless require us to reverse the judgment of sentence and order a new trial. Because this is the case, we need not decide what effect we could properly give to the communications we received after our opinion was filed.

begin with the general rule that the admission and exclusion of evidence is a matter within the discretion of the trial judge. *E. g., Commonwealth v. Hart,* 479 Pa. 84, 387 A.2d 845 (1978); *Commonwealth v. Scott,* 469 Pa. 258, 368 A.2d 140 (1976); *Commonwealth v. Kivlin,* 267 Pa.Super. 270, 406 A.2d 799 (1979). That discretion, however, may be abused, and abuse may be found if it appears that the judge admitted irrelevant evidence that was prejudicial to the accused, *e. g., Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564 (1973), or evidence the probative value of which was outweighed by its prejudicial impact. *E. g., Commonwealth v. Schroth,* 479 Pa. 485, 388 A.2d 1034 (1978); *Commonwealth v. Ulatowski,* 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973); *Commonwealth v. Kramer,* 247 Pa.Super. 1, 371 A.2d 1008 (1977); McCormick, Evidence § 185 (Cleary ed. 1972). First, therefore, we must appraise the relevance of Loub's testimony and the photographs, and then we must weigh that relevance against their prejudicial impact.

Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case. *Commonwealth v. Hickman, supra,* 453 Pa. at 433, 309 A.2d at 567. *See also Commonwealth v. Story, supra,* 476 Pa. at 398, 383 A.2d at 158, *quoting* McCormick, Evidence § 185 at 438 (Cleary ed. 1972) ("Relevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible"). In the present case, the principal issue in dispute was not whether Marcelo's Pharmacy was robbed on July 19, 1977, by two armed men, but whether appellant was one of the robbers. It will be recalled that Edmund Marcelo was the only person to identify appellant as one of the robbers. Since James Dunlevy could identify only Cronin as one of the robbers, his testimony could be relevant to the issue of appellant's identity only to the extent that it supported, or contradicted, Marcelo's testimony. In certain respects, Dunlevy's testimony plainly did support Marcelo's, in particular, the testimony that Mar-

celo's Pharmacy had indeed been robbed on July 19, and that the robber Dunlevy observed (Cronin) was armed. Dunlevy's testimony that several months after the robbery he was shown a photograph of a gun that he recognized as having been used by Cronin in the robbery, together with the introduction of the photograph, was relevant only by way of illustrating Dunlevy's earlier testimony, thereby giving the jury a better understanding of the kind of gun Cronin possessed. Loub's testimony that on November 5, 1977, he apprehended Cronin and recovered a gun that was subsequently photographed was relevant to establish a foundation for the photograph identified by Dunlevy. This testimony also tended to corroborate Dunlevy's identification of Cronin as a robber since it placed in Cronin's possession the gun used in the robbery. Thus, up to this point it may be said that Loub's testimony was relevant to the issue of appellant's identity only to the degree that it corroborated Dunlevy's corroboration of Marcelo's testimony, Loub's additional testimony, concerning the details of his apprehension and shooting of Cronin, and the photographs taken at the scene of the shooting, were relevant only in an even more attenuated way, for their only relevance was to bolster the credibility of Loub's testimony that on November 5 he apprehended Cronin and recovered a gun. In this regard, it should be noted that appellant did not attack Loub's credibility, other than to inquire why he brought a photograph of the gun to trial rather than the gun itself. Loub's credibility was not in issue, and the jury would have had no reason to disbelieve him. On balance the most that may be said regarding Loub's testimony and the photographs taken at the scene of the shooting of Cronin is that they were marginally relevant to the issue of appellant's identity.

On the other hand, the prejudice that resulted to appellant from the introduction of Loub's testimony and the photographs was substantial. Of course, as the Commonwealth asserts, it would have been illogical for the jury to impute to appellant Cronin's attempted murder of the officer, and had

Loub's description of the circumstances surrounding Cronin's death been briefer and the photographs taken at the scene not been introduced and displayed to the jury, any prejudice to appellant would have been minimal.[4] But Loub's description was not brief, and the photographs were introduced and displayed to the jury.

In addition, the danger this created that the jury would confuse Cronin's misdeeds with the charges against appellant was heightened—and exploited—by the district attorney in his closing argument, when he said:

Certainly from the evidence that you heard in this case there was an agreement to commit the crime, because two people don't just walk in a store accidentally, pull out guns accidentally, and one watches the place while the other one has the people crawling around on the floor. And they don't accidentally leave together, they don't accidentally jump in a car waiting outside with the engine running with a blond driving it. That's a conspiracy. There is an obvious agreement there.

Possession of instruments of a crime is possession of the gun. We don't have one of the guns or any of the pills, but we have the other gun, a gun which one of the co-conspirators tried to shoot a police officer in New Jersey with—

Mr. Berkowitz [defense counsel]: Your Honor, I object. I ask the court to strike that remark in this case.

The Court: Motion denied.

Mr. Castille [district attorney]: You are allowed to make reasonable inferences from the facts produced, and you are allowed to draw inferences from the evidence produced in this particular crime.

That was not only an inference, that's what the policeman said. What was the guy doing, sticks a gun at the

4. Indeed, the first time Dunlevy was called to testify, he made several passing remarks, without objection from appellant's counsel, regarding Cronin's death. *See* N.T. 1/24/78 at 16, 35–36.

policeman's head? What was he trying to do to him? He was trying to shoot him, that's all.

So possession of a weapon by either person. You heard testimony two people had guns.

N.T. 1/26/78 at 27–28.

This intemperate statement confused Cronin's attempted murder of Officer Loub with appellant's culpability for the robbery of Marcelo's Pharmacy, and amounted to an invitation to the jury to do the same. The lower court should have sustained appellant's counsel's objection to the district attorney's argument, and should have done immediately what it had failed to do when Loub's testimony and the photographs were introduced—*i. e.*, give the jury a cautionary instruction as to the limited purpose for which the testimony and photographs had been admitted into evidence. *Cf. Commonwealth v. Geho,* 223 Pa.Super. 525, 302 A.2d 463 (1973) (when co-defendant pleads guilty during a consolidated trial court has duty "to give adequate and clear cautionary instructions to the jury to avoid 'guilt by association' as to the defendant being tried"). The lower court, however, never gave such an instruction, and the evidence was submitted to the jury to use as it saw fit.

■ It is settled that evidence of criminal activity not charged in the indictment or information on which the defendant is being tried cannot be introduced at trial except in certain limited circumstances. This principle is premised on the observation that although the commission of one offense is not proof of the commission of another, a factfinder will often be reluctant to acquit a known criminal. *E. g., Commonwealth v. Fuller,* 479 Pa. 353, 388 A.2d 693 (1978); *Commonwealth v. Roman,* 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955). This principle is frequently applied to exclude evidence of the accused's own prior and subsequent crimes; but a similar principle applies to exclude evidence that might

persuade a jury to convict an accused on the basis of unrelated criminal activity by another. Thus in *Commonwealth v. DuVal*, 453 Pa. 205, 213, 307 A.2d 229, 233 (1973), the Supreme Court held that it was improper for the district attorney to call to the stand a witness likely to be associated with the defendant in the minds of the jurors, when the district attorney knew that the witness would assert his privilege against self-incrimination. "[T]he inference to be drawn from the refusal to testify of the defendant's co-defendant, accomplice or associate has *no probative value whatsoever* in establishing the guilt of the defendant. It is rather an effort to cause the jury to think 'guilt by association.'" 453 Pa. at 213–14, 307 A.2d at 232–33 (original emphasis). Similarly, in *Commonwealth v. Hales*, 384 Pa. 153, 119 A.2d 520 (1956), the Court held that it was reversible error to permit the district attorney to question a defendant charged with murdering her six-week old baby about her weekly visits with her aunt, when the aunt was in no way connected with the crime but had been imprisoned for committing an unrelated murder. In *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521 (1979), the Court stated that it was improper for the district attorney to refer to the accused's membership in the Black Muslims, a group that had been the subject to widespread unfavorable publicity because of the criminal activity of some of its members, and in *Commonwealth v. Truitt*, 369 Pa. 72, 85 A.2d 425 (1951), the Court ordered a new trial because of the improper admission of evidence concerning the accused's Communistic connections. *See also Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973), and *Commonwealth v. Trapp*, 217 Pa. Super. 384, 272 A.2d 512 (1970) (disclosure of co-defendant's criminal history aggravated prejudice accused already suffered from improper disclosure of his own prior crimes); *Commonwealth v. Greenwood*, 488 Pa. 618, 413 A.2d 655 (1980) (new trial granted because of district attorney's irrelevant examination on defendant's participation in the Universal Life Church).

It is the duty of the district attorney to seek justice and not merely a conviction. *Commonwealth v. Evans*, 479 Pa. 100, 387 A.2d 854 (1978); *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978); *Commonwealth v. Mayberry*, 479 Pa. 23, 387 A.2d 815 (1978); ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 1.1(c) (Approved Draft, 1971). Here, the Commonwealth admits in its brief that it "had no intention of calling Officer Loub as a witness or presenting any evidence concerning the fatal encounter between Loub and Cronin" until appellant requested the production of the photographs, Commonwealth's Brief at 18, and further asserts that "[i]f defendant wished to keep Loub's testimony from the jury, he should have refrained from demanding the photograph." [5] *Id.* The lower court accepted this excuse.[6] We do not. Appellant's counsel had the right to demand the production of the photograph of the gun identified by Dunlevy. Indeed, the photograph should have been introduced when Dunlevy first testified that he had made the identification. Counsel also had the right to demand that a foundation be laid before the photograph was admitted into evidence. It should have been a simple matter for the district attorney to lay the necessary foundation without asking Loub to describe his shooting of Cronin, a collateral matter that was not probative of any matter in dispute. Instead, the district

5. These assertions belie the Commonwealth's assertion elsewhere in its brief that "evidence of Cronin's traffic violation, and ensuing gun battle with Officer Loub, was essential to establish Cronin's identity as one of the males who held the Marcelos and Dunlevy at bay with the identical weapon," Commonwealth's Brief at 18. Furthermore, Loub's testimony regarding his shooting of Cronin did not establish Cronin's identity as one of the robbers of Marcelo's Pharmacy; it was, as has been discussed, at best only marginally relevant to buttress Loub's credibility (which had not been attacked).

6. At trial the lower court stated:
Well, presuming this matter has a prejudicial effect, which I don't believe insofar as the ambience of the entire matter, this has to be told. The point here is that a very simple question here has been, from the defense point of view, according to your objection here, has been exacerbated by an objection that required this testimony be established.
N.T. 1/25/78 at 49–50.

attorney intentionally developed an inquiry into the circumstances of Cronin's violent death, displayed photographs of Cronin's dead body to the jury, and then, during closing argument, confused the charges against appellant with Cronin's misdeeds. The effect of this conduct was to punish appellant for exercising his right to insist that the Commonwealth be put to its proof. In these circumstances, the Commonwealth is in no position to argue that the potential prejudice caused by the conduct did not in fact materialize.[7] *See generally Commonwealth v. DuVal, supra*; *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977); *Commonwealth v. Cannon*, 453 Pa. 389, 309 A.2d 384 (1973). Nor can it be maintained in these circumstances, where only one eyewitness identified appellant at trial and no cautionary instructions were given by the court, that the prejudice suffered by appellant was harmless beyond a reasonable doubt. *Commonwealth v. Story, supra.*

Judgment of sentence reversed, and case remanded for new trial.

VAN der VOORT, J., notes his dissent.

## ORDER

And now on this 7th day of January 1981 it is ordered that the opinion authored by me in the case of *Commonwealth v. Krajci*, filed on August 1, 1980 be withdrawn and that my revised opinion in this case be filed.

7. Although they do not affect our result, we note that the record discloses other instances of intemperate conduct by the district attorney. For example, at one point in the trial, the district attorney referred to appellant's mugshot. N.T. 1/19/78 at 68. Later, during closing argument, when appellant objected to the district attorney's references to the out-of-court identifications by Marcelo's children, *see* note 1, *supra*, the district attorney stated:

All right, let's bring the children in here, bring them in, put them on the witness stand, let Mr. Berkowitz [defense counsel] ask them the questions I can't even understand. Let's let these little children relive the traumatic experience. That sounds like a lot of fun. N.T. 1/26/78 at 48.