Syllabus—Assignment of Errors.    [90 Pa. Superior Ct.

## Cora P. King v. Francis Keller, Appellant. (No. 1.)

*Practice C. P.—Witnesses—Interrogation by the court—Testimony as to speed—References to insurance company—Relevency—Ground for withdrawal of juror.*

It is within the discretion of the court to interrogate witnesses for the purpose of clarifying indefinite or disputed parts of the testimony. Where, in answer to counsel's question as to the speed of an automobile, the witness said "If it was not going forty-five miles an hour it was not going a mile," the judge's question, "You mean at least that?" was not an abuse of discretion, but amounted merely to a clarification of the witness' answer.

In an action of trespass for personal injuries, testimony to the effect that the defendant is insured is irrelevant, and its introduction is ground for the withdrawal of a juror. Mere references to an insurance company or its agent, which do not disclose anything indicating that it had insured the defendant or the extent of its liability, are not such references as might reasonably lead a jury to believe that any verdict rendered by it would be paid by an insurance company, and hence are not ground for the withdrawal of a juror.

Argued March 9, 1927. Appeal No. 37, February T., 1927, by defendant from judgment of C. P. Lackawanna County, November T., 1924, No. 1265, in the case of John W. King and Mrs. Cora P. King v. Francis Keller. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Trespass for personal injuries. Before MAXEY, J.

The facts are stated in the opinion of the Superior Court.

Verdicts for plaintiffs in the sums of $2,473 for Cora P. King and $1,371.50 for John W. King and judgments thereon. Defendant appealed.

*Errors assigned* were the refusal to withdraw a juror and refusal of a new trial.

*Clarence Balentine,* and with him *Kelly and Kennedy,* for appellant.

*Harold A. Scragg,* and with him *Robert E. Scragg,* for appellee.

OPINION BY CUNNINGHAM, J., April 22, 1927:

About midnight of May 21, 1924, Francis Keller, defendant below and appellant herein, was driving his automobile, in which John W. King and Cora P. King, his wife, Verna Westcott and Leah Schwindt, sisters of Mrs. King, were riding as his guests, from the Borough of Elmhurst to the City of Scranton, Pa. While traversing the Drinker Turnpike, an improved highway, at a point where there is a descending grade with a curve to the left at the bottom, the defendant so operated his car that it left the improved portion of the highway and crashed into a telephone pole, with the result that it was wrecked and each of the driver's guests suffered serious personal injuries. Among the actions brought to recover damages for these injuries upon the ground that they resulted from the negligent operation of his car by defendant was a joint action by John W. King and his wife, Cora P. King. The negligence averred in the statement of claim was the failure of defendant "to have his motor vehicle under proper and adequate control" and operating it "at a rate of speed which was very high, reckless and dangerous." At the trial defendant presented a point in writing requesting binding instructions in his favor, which point was refused. The jury returned a verdict awarding damages to the husband in the sum of $1,371.50 and to the wife in the amount of $2,473. Defendant's motions for judgment n. o v. and for a new trial having been overruled, a separate judgment in favor of each plaintiff was entered on their respective verdicts and from the judgment in favor of Cora P. King the defendant has taken this appeal.

There are no assignments of error based upon the refusal of the court below to enter judgment in favor

of the defendant n. o. v. but it is earnestly and vigorously contended that the defendant is entitled to a new trial because the learned trial judge erred, (a) in overruling defendant's objection to a leading question with relation to the speed at which he was operating his car at the time of the accident, and, (b) in refusing to withdraw a juror and continue the case when certain references were made by plaintiff and two of her witnesses to an insurance company and an insurance man in a manner which defendant contends violated the rule against bringing to the attention of a jury the fact that a defendant was insured against the liability which a plaintiff was seeking to enforce.

1.   The first assignment of error charges that error was committed in overruling defendant's objection to a question asked by the court relative to the speed of the car.   The circumstances under which the interrogation was made, as disclosed by the record, were these:   The plaintiff had testified that immediately before the accident "the car was going too fast or very much faster than we had ridden before"; her sister, Leah Schwindt, that "just after we passed the Mt. Cobb Road Mr. Keller started to speed"; and another sister, Verna Westcott, that "he started to go faster and faster"; but there had been no evidence upon which a jury could properly base any finding with respect to the speed at which the car was operated until an entirely disinterested witness, Alex Silas, was called by the plaintiff.   This witness was driving his automobile up the grade as the defendant's car was coming down and, referring to the manner in which defendant's car was approaching, testified "Anyhow, the car was coming down towards me at an awful speed, and I put my dim lights on and pulled in the side and slowed down ...... and the minute the car hit that grade I heard a crash and screaming, and I stopped my car and put the spotlight on."   Counsel for plaintiff then asked the witness to state at what

rate of speed he "would say they were going." Before this question was answered counsel for defendant exercised his right to examine the witness as to his qualifications to express an opinion relative to the speed of a car, after which (his objection to the competency of the witness having been overruled) the question was repeated. The reply of the witness was "If it was not going forty-five miles an hour it was not going a mile. It was going fast and reckless." Counsel for defendant objected to this answer and asked to have it stricken out. The ruling of the court was "I will strike out the last part of the answer about reckless; that is a conclusion," and then the following questions were asked by the court and answers made by the witness: "Q. Was it going forty-five miles an hour or not? A. Yes, sir. Q. You mean at least that? A. At least that, yes, sir, if not more." Counsel for defendant then said, "I desire to object to the question as leading," to which the court replied, "He said if he wasn't going forty-five miles an hour he wasn't going a mile, and I asked him if he was going forty-five miles or not. I overrule the objection." The rights and duties of a judge relative to the interrogation of witnesses in the course of a trial were considered by our Supreme Court in Com. v. Myma, 278 Pa. 505, and we quote the following from the opinion in that case: "Appellant insists the trial judge unduly questioned a juror and a number of witnesses to his prejudice. A judge in a jury trial has a right to interrogate witnesses. It sometimes becomes his duty to do so, even to the point of recalling a witness to supply an omission of proof on a material point: Boggs v. Jewell Tea Co., 266 Pa. 428, 434; State v. Jackson, 87 S. C. 407, 69 S. E. 883; Lycan v. People, 107 Ill. 423. But a judge may so conduct an examination as to make it an abuse of discretion, requiring a new trial.

Witnesses should be interrogated by the judge only

600    C. P. KING v. F. KELLER, Appellant.    (No. 1.)

Opinion of the Court.    [90 Pa. Superior Ct.

when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. ...... Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses' credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them."

From an examination of the entire testimony of this witness we are convinced that the learned trial judge was justified in holding that the witness was qualified to express an opinion relative to the speed of the car and that he did not abuse the discretion vested in him by the manner in which the witness was interrogated. There was no suggestion in the questions of counsel or of the trial judge as to any particular rate of speed and the inquiries of the court amounted merely to a clarification of the opinion rather indirectly, but positively, expressed by the witness. The first assignment of error is accordingly dismissed.

2. The remaining assignments of error are predicated upon the contention of the learned counsel for appellant that the jury was permitted to learn that the defendant was insured against liability to the plaintiff for the injuries she had received, with the result that the issue was shifted to one between her and the insurance carrier, to the prejudice of the defendant. These assignments and the exceptions supporting them bring up for our consideration four instances in the course of the trial in which reference was made to an insurance company or to an insurance man's activities in connection with the case. Two of these were made by the plaintiff—one in her cross-examina-

C. P. KING *v.* F. KELLER, Appellant. (No. 1.)    601

596, (1927).]        Opinion of the Court.

tion when testifying in chief and the other in her direct examination while testifying in rebuttal. Another reference to an insurance company was made by a witness for the plaintiff who was called to identify certain photographs of the scene of the accident and the fourth by plaintiff's sister while testifying in rebuttal and under cross examination. In three instances counsel for defendant moved to strike out the objectionable testimony, which motion was promptly granted by the court and the jury instructed to disregard any allusions to an insurance company. In each of these instances counsel for defendant also moved that a juror be withdrawn. In the fourth instance no motion to strike out was made but the court was asked to withdraw a juror. In overruling this motion the court struck out the testimony and directed the jury to disregard it. There is no difficulty about the rule itself. The authorities are reviewed and discussed by Judge Henderson in the case of Scranton Gas and Water Co. v. Weston, App., 63 Pa. Superior Ct. 570, 575. From the cases (Walsh v. Wilkes-Barre, App., 215 Pa. 226; Martin v. Baden Borough, 233 Pa. 452; Hollis v. U. S. Glass Co., App., 220 Pa. 49; Lenahan v. Pittston Coal Mining Co., App., 221 Pa. 626; Curran v. Lorch, App., 243 Pa. 247; and Conover v. Bloom, App., 269 Pa. 548) it is clear that the fact that the defendant in an action for personal injuries is insured against liability for such injuries has not the slightest bearing on the issue and it is equally clear that the introduction by plaintiff of this irrelevant fact, whether by statements of counsel, testimony, offers of proof or questions asked witnesses or jurors under the pretense of disclosing interest or bias, is ground for reversal. Our Supreme Court has said (Lenahan v. Pittston Coal Mining Co., App., supra) that this rule will be strictly adhered to and rigidly enforced and no evasion or circumvention by indirection will be tolerated. In this connection it

602    C. P. KING *v.* F. KELLER, Appellant.   (No. 1.)

Opinion of the Court.   [90 Pa. Superior Ct.

may also be said that, if the rule is actually violated, a trial judge's direction to the jury to disregard all allusions to an insurance company does not cure the error and a juror should be withdrawn: Fisher v. Del., Lack. and West. Railroad Co., App., 227 Pa. 635. The difficulty in this case does not relate to the scope of the rule but rather to the question whether the statements of the various witnesses, considered in the light of the circumstances under which they were made, really amount to such a violation of the prohibition as to call for a reversal of this judgment. It is only proper to say that the learned counsel for plaintiff carefully refrained from referring in any way to any insurance company and this fact distinguishes the case at bar from such cases as Walsh v. Wilkes-Barre; Hollis v. U. S. Glass Co., supra, and cases of that class. Indeed, it is apparent from a reading of the entire testimony that plaintiff and her witnesses had been instructed by her counsel to avoid in her case in chief any reference to the activities of a man by the name of O'Neill, engaged in some kind of insurance business, who had interviewed the victims of the accident and obtained a written statement from them, and that references to this man and his business were mainly due to the fact that counsel for appellant offered this statement in evidence for the purpose of endeavoring to contradict certain portions of the testimony submitted in behalf of the plaintiff.

The first reference complained of was made by a police officer, who was also an amateur photographer, called by the plaintiff to identify photographs of the wrecked car and the scene of the accident. When asked by plaintiff's counsel at whose request the photographs were made he replied, "I was sent there by the Director [of police] for an insurance company; O'Neill I think it was." The next occasion was during the cross examination of the plaintiff. One of the controverted questions at the trial (but which is not

involved in any way on this appeal) was whether the occupants of the car made any outcry or protest against the manner in which the defendant was driving. It also appears from the testimony that this man O'Neill, about fifteen days after the accident, called at the home where the injured persons were being cared for and insisted upon obtaining from them a statement relative to the circumstances of the accident. A statement was finally obtained, signed by the plaintiff and her sisters, and a separate statement was secured from her husband. Defendant did not take the witness stand or call any witnesses in his behalf but the statement signed by plaintiff and her sisters, and identified by them, was offered and received in evidence upon the ground that one of the paragraphs contained therein, to the effect that "No one in the car drew Mr. Keller's attention to the fact that he was traveling too fast, it all happened so quick that we did not realize what happened," tended to contradict certain testimony given by the plaintiff and her sisters when upon the witness stand. It was also contended by counsel for appellant that the testimony of the plaintiff, to the effect that she had protested against the speed of the car, was in contradiction of the contents of her statement of claim. These circumstances throw some light upon the second reference to insurance complained about. When the plaintiff was under cross examination in her case in chief counsel for appellant showed her the statement of claim, signed and sworn to by her and by her husband, and asked her whether she had sworn to this paper before a certain alderman, whose name appeared thereon as having taken the affidavit of plaintiffs. Plaintiff, evidently confusing this paper with the statement which she had signed at the instance of O'Neill, stated that she had not sworn to it before the alderman. Upon being interrogated as to whether she knew the alderman, she asked, "Is this the statement that Mr. O'Neill,

604   C. P. KING *v.* F. KELLER, Appellant.   (No. 1.)

Opinion of the Court.   [90 Pa. Superior Ct.

the insurance man, took from our house when I was in bed?'' These are the only references to an insurance man in the plaintiff's case in chief. After the statement obtained by O'Neill had been admitted in evidence counsel for plaintiff called her and her sisters in rebuttal for the purpose of showing the circumstances under which the statement had been obtained and developed that O'Neill came to the home of plaintiff's mother, where plaintiff was confined in bed with her injuries and her sisters were also confined to the house as a result of the accident, and insisted upon obtaining a statement of the circumstances; that they at first refused to make any statement because they did not want to be annoyed while suffering so much pain but, through the persistence of O'Neill who remained at the house from ten o'clock in the morning until three in the afternoon, were finally induced to sign the statement which he had written out after asking them many questions. In the course of the plaintiff's rebuttal testimony the third reference to insurance occurred as follows. ''Q. What did he [O'Neill] say when he asked you to sign it [the statement]? ...... A. When he asked me to sign it he said it was a statement. Q. What else, if anything, did he say? Did he say anything else? A. Yes, sir; he said it was for an insurance company.'' Thereupon counsel for appellant moved that a juror be withdrawn and when the court overruled the motion the witness volunteered the statement ''That is why I hesitated to answer the question.'' The answer was evidently unexpected to counsel for plaintiff who seems to have been merely trying to develop all the circumstances attendant upon the signing of the statement in order to support his contention that it was not given voluntarily. The remaining reference objected to was in the testimony of plaintiff's sister, Mrs. Leah Schwindt, also testifying in rebuttal and under cross examination by counsel for appellant, and occurred

C. P. KING *v.* F. KELLER, Appellant. (No. 1.) 605

596, (1927).] Opinion of the Court.

thus: "Q. Did you notice in this paper when you signed it 'The above statement is given and signed by us three to the best of our ability'? A. I did not. I asked Mr. O'Neill if my other sisters and my brother-in-law signed that paper for the insurance company and he said yes." As stated, all these references to an insurance company or an insurance man were stricken out by direction of the trial judge and in the charge the following language was used: "Now, it happened in this case, as it often happens in lawsuits, that things creep into the case that the judge is obliged to exclude from the case because they have no lawful or logical bearing on the case. You heard us say, 'we strike that out.' We can strike it off the record, but we cannot always strike it out of the minds of the jurors. We cannot tell you to forget something, because if we told you to forget something it might make you remember it; but we can instruct you and you can follow our instructions to this extent, that you are to decide this case between the plaintiffs and this defendant without considering any reference to any insurance company. There is no insurance company that is a party to this record or a party to this lawsuit. The parties to this case are simply Cora P. King and John W. King against Francis Keller. You are to decide it upon the evidence as you heard it here in court and on nothing else." The thing prohibited by the rule is bringing to the attention of the jury in any way the fact that the defendant in a case of this kind is protected from liability by an insurance company which must pay any verdict rendered. Did these references do that?

It is to be noted that the references were extremely indefinite and were merely to "an insurance company" or to "Mr. O'Neill, the insurance man." A careful examination of all the testimony fails to disclose anything indicating that the insurance company

606   C. P. KING *v.* F. KELLER, Appellant.   (No. 1.)

Opinion of the Court.   [90 Pa. Superior Ct.

mentioned was a company which had insured the defendant against any kind of liability and was therefore interested in the result of the trial. All the jury could possibly know was that a man by the name of O'Neill, who was present when the photographs were taken and who had obtained the statement, was engaged in the insurance business and represented some company. What kind of a company it was or whom it had insured and to what extent could not possibly be learned from the statements. Before applying the rule we should be able to see that the references might reasonably have led the jury to believe that any verdict rendered by it would have to be paid by an insurance company. It is difficult to see how this jury under all the circumstances could possibly have drawn any such inference from any of the references complained about or from all of them taken together. None of the statements was nearly as direct as the statement made by a witness testifying in behalf of the plaintiff in the case of Hendrickson v. Quaker City Cab Co., App., 84 Pa. Superior Ct. 218. The case in which that appeal was taken had been tried with two other cases in the court below to recover damages for personal injuries resulting from the same collision. During the progress of the trial of the Hendrickson case a plaintiff in one of the other cases, not related to the appellee but otherwise in the same situation as was Leah Schwindt in this case, while being examined as to her injuries, stated "My landlady came while I was still in bed and said there are two strangers downstairs who say that they are from an insurance company for the Quaker City Cab Company, shall I send them up? I said no, send them to my lawyer, and they can make an appointment to come when my doctor is present. That is the word I sent, and they did not come any more." The trial judge offered to strike out this testimony but refused to withdraw a juror.

There the statement was that the callers represented "an insurance company for the Quaker City Cab Company," the defendant in the case, or, in other words, represented defendant's insurance carrier. This court pointed out that the remark of the witness was evidently unanticipated by counsel for the plaintiff and held that unless there is a reasonable belief that the unexpected statement would have a prejudicial effect on the defendant it does not constitute a ground for the withdrawal of a juror.

It is a fair inference from a consideration of the whole record in this case that there was no attempt at any stage of the trial by counsel for plaintiff, or by plaintiff or her witnesses, to bring to the attention of the jury the fact, if it be a fact, that an insurance company was interested in the verdict, and it seems clear that, with the exception of the reference to the mere presence of O'Neill when the photographs were taken, none of the statements of which appellant complains would have been made if O'Neill had not chosen an inopportune time, and proceeded in an unduly persistent manner, to secure the statement. If he had been called to the stand to identify the statement or to contradict plaintiff and her sisters relative to the manner in which it was procured, it would have been proper to ask him if he did not represent an insurance company: Lenahan v. Pittston Coal Mining Co., supra.

The amount of the verdict, in view of the serious injuries of the plaintiff, does not indicate that the jury was prejudiced in any way against defendant. A majority of the members of this court are of opinion that, under all the circumstances, the references of plaintiff and her witnesses to an insurance company could not reasonably have had a prejudicial effect upon the defendant and that they do not furnish sufficient

608   C. P. KING *v.* F. KELLER, Appellant.   (No. 1.)

Opinion of the Court.   [90 Pa. Superior Ct.

grounds for the reversal of the judgment and the granting of a new trial.

The remaining assignments of error are accordingly overruled and the judgment is affirmed.