J-S59041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADOLPH LEE | : | |
| | : | |
| Appellant | : | No. 56 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013290-2014

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 03, 2020**

Adolph[1] Lee appeals the judgment of sentence entered after a jury found him guilty of three counts of possession with intent to deliver a controlled substance ("PWID").[2] We affirm.

Philadelphia Police Officers used a confidential informant ("CI") to engage in drug transactions involving Lee. Prior to each transaction, the CI called a telephone number in the presence of officers, asked for "Adolph" and asked to purchase drugs. Officers observed Lee coming out of a house in Southwest Philadelphia, or standing on the sidewalk right in front of the house, during each transaction. Following each transaction, the CI returned to the

---

[1] In his brief to this Court, Lee spells his first name with an "f," *i.e.*, "Adolf." However, the certified record, the Commonwealth, and the trial court use the spelling ending in "ph," "Adolph," as appears in the caption. Because no one contends that the "ph" spelling is incorrect, we use that spelling.

[2] 35 P.S. § 780-113(a)(30).

officers with Xanax pills; following one purchase, the CI returned with marijuana as well.

On another occasion, the CI arranged to purchase a firearm from Lee. After a phone call and meeting with Lee, the CI returned with a firearm and ammunition. After a final drug purchase from the CI, officers arrested Lee and recovered $851 in cash; a cell phone that had the same number as the CI had called to arrange the transactions; and keys that fit the front door of the house in Southwest Philadelphia. Police officers executed a search warrant on the house and recovered a loaded firearm.

The Commonwealth charged Lee with five counts of PWID as well as numerous other offenses: one count each of possession of a controlled substance, possession of drug paraphernalia, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, possessing firearm with altered manufacturer's number, possessing instruments of crime, and criminal use of communication facility; two counts of persons not to possess firearms; three counts of sale or transfer of firearms; and five counts of criminal conspiracy.[3] Lee's co-conspirator, Kyle Pressley, was also charged, and was listed for a joint trial with Lee. Pressley entered a negotiated guilty plea before trial.

The jury found Lee guilty of three counts of PWID and one count of possession of a controlled substance, but acquitted him of all other charges.

---

[3] 35 P.S. §§ 780-113(a)(16), (32); 18 Pa.C.S.A. §§ 6106(a), 6108, 6110.2(a), 907, 7512(a), 6105(a), 6111(g)(1) & (2), and 903(a), respectively.

The trial court sentenced Lee to nine to 18 years' incarceration. This timely appeal followed.

Lee asks this Court to review the following claims:

1. The [t]rial [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, because the evidence was insufficient to convict him of the charges against him. The evidence was insufficient to convict [Lee] of Possession with the Intent to Deliver, because the evidence presented was insufficient to prove [Lee] supplied any illegal narcotics to the confidential informant, nor that [Lee] possessed any pre-recorded buy money, or possessed any illegal narcotics at any relevant time.

2. The [t]rial [c]ourt erred and denied [Lee] the due process guaranteed to him by State and federal Constitutions, because the verdict was against the weight of the evidence.

3. The pre-trial [c]ourt erred in denying [Lee's] request that an alleged confidential informant who was known to [Lee] at the time of trial and interviewed by [Lee], be labeled a material witness and [o]rdered to appeal at trial.

4. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, when the [c]ourt precluded [Lee] from calling a witness essential to [Lee's] defense. The [c]ourt committed a further error in said denial, after a Court of Common Pleas Judge of equal jurisdiction ruled, prior to trial, that said witness could be called and interviewed by [Lee].

5. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, in denying [Lee's] request for a mistrial, when the prosecution disobeyed a direct Court Order not to tamper with trial evidence, namely the alleged cellular phone of [Lee], after the commencement of trial. In addition, it was reversible error when the [c]ourt prohibited [Lee] from powering on the alleged cellular phone of [Lee] at trial.

6. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, by permitting the Commonwealth to argue to the [j]ury, that the [j]ury could consider evidence of crimes, drug and firearm offenses, that [Lee] was not charged with, when seeking a verdict in the instant matter; and subsequently advising the [j]ury of the same.

7. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, when it instructed the Commonwealth and permitted same to provide Detective Mangold and Police Officer Jason Yerges with specific language to offer as testimony before the [j]ury, solely based on Detective Mangold's and Officer Yerges' previous answers on direct examination.

8. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, in denying [Lee's] motion *in limine* requesting the preclusion of the hearsay testimony offered for the truth by Philadelphia Police Officer Jason Yerges, specifically but not limited to the out of [c]ourt averments of confidential informant #1480.

9. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, when instructing the [j]ury on the premise of constructive possession as [Lee] was charged solely with the alleged conduct of an observed exchange of narcotics.

10. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, when instructing the [j]ury to consider evidence of items and evidence of charges that were dismissed at the preliminary hearing during deliberation.

11. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, by sustaining an unwarranted Batson challenge by the Commonwealth; and denying same as to [Lee].

12. The [c]ourt erred and denied [Lee] the Due Process guaranteed to him by State and Federal Constitutions, by refusing to answer the [j]ury's question during

> deliberations as to whether [Lee's] key worked the front door of the target residence.

Lee's Br. at 1-3.

## SUFFICIENCY AND WEIGHT OF EVIDENCE

Lee's statement of the questions involved includes the assertion that the evidence was insufficient and the verdict was against the weight of the evidence. **See** Lee's Br. at 1. However, he fails to develop or mention either issue in the argument section of his brief. He therefore has waived review of these claims. **Commonwealth v. Puksar**, 951 A.2d 267, 293 (Pa. 2008) (holding claim waived where appellant failed to "make or develop his argument").

## MATERIAL WITNESS

Lee maintains that because the pre-trial judge granted him the ability to call a particular defense witness, the trial judge violated the coordinate jurisdiction rule by "precluding the testimony" of that witness. Lee's Br. at 9, 10. This claim is meritless.

"Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." **Zane v. Friends Hosp.**, 836 A.2d 25, 29 (Pa. 2003). Here, the coordinate jurisdiction rule is inapplicable because the trial judge did not preclude Lee from calling his defense witness.

Before the case was transferred for trial, a judge ruled that Lee, "would be allowed to call whatever witnesses that he likes, provided that he provides the information that he would normally provide to the Commonwealth, as in all the background information that you request, and Fifth Amendment Counsel would be appointed to this person." N.T., 4/3/17, at 9. The case was then transferred to a different judge for trial the same day. On the second day of trial, the court inquired whether Lee intended to call the witness that the prior judge had said he would be able to call. Having subpoenaed the witness, defense counsel responded, "[I]t is our intention, if he appears to call him." N.T., Trial, 4/3/17, at 10; 4/4/17, at 96. The court then informed counsel of its hesitation to allow Lee to call the witness but declined to rule on the issue until it actually arose: "[R]ight now, I'm not dealing with it because I don't have this individual before me." N.T., 4/4/17, at 98-99. Lee then rested his case without calling any witnesses. Thus, the claim is meritless, as the trial court did not prevent Lee from calling any witness.

**DENIAL OF MOTION FOR MISTRIAL**

Next, Lee claims that the trial court should have granted his oral motion for a mistrial. On the fourth day of trial, the Commonwealth introduced into evidence the cell phone retrieved from Lee on the day of his arrest. During the cross-examination of the officer who retrieved the phone, the following exchange occurred:

> Q [Defense Counsel]: My question is this, simple. Did you testify that the confidential informant made a call on each of 6 days?

A [Officer Jason Yerges]: That's correct.

Q: And if we powered that phone up, there should be a consistent phone number for each of those six days?

A: Oh, yes. Yes.

Q: For those six days?

A: Yes.

[Defense Counsel]: Can I see [the] phone, please? May I approach, Judge?

THE COURT: Can I ask you a question. Do you think you are going to be able to power that phone up in the next two minutes after three years of sitting; is that what you want to do?

[Defense Counsel]: Well, Judge –

THE COURT: Just let me know now, because I'm going to give these folks a break.

[Defense Counsel]:Well, I can power it up and if need be, we can call this witness back in rebuttal. I just want to see what –

THE COURT: I think this is a fine time for a break.

N.T., 4/6/17, at 70-71. During the break, after argument from both sides, the trial court ordered that if either party "want[ed] to have someone power [the cell phone] up, ask me. Show me the charger. Show me who's going to do that." *Id.* at 147.

But in terms of plugging it in, I want to know who is going to do that. This is an item that is in, frankly, on the record, as a piece of evidence, so neither one of you can touch it, other than look at it.

So, if you want to have someone power it up, ask me. Show the charger. Show me who's going to do that.

And, in addition to that, Commonwealth has a right to have that process observed by their technological person,

- 7 -

because if it does turn on, somebody's going to say one of two things. Oh, we need a code, or oh, we don't need a code. Oh, I want to look at this phone. Oh, I want to rollback and see what's called, if I can do that with this phone, which I don't know if is possible at this time. . . .

So, that means that you, sir, and you, sir, cannot facilitate that process, because that process, by it[s] very nature, leads potentially to a second process, which leads to, it did this, no, it didn't, yes, it did.

*Id.* at 146-47.

The next day, the Commonwealth informed the court that its technology specialist scheduled to testify regarding the cell phone "turned on the phone and that she was unable to get into it because it's locked." N.T., 4/7/17, at 6. Defense counsel requested a mistrial on the basis that the Commonwealth had violated the court's order. *Id.* at 18-19. While the trial court agreed that the action of the Commonwealth was a violation of its order, it nonetheless denied the motion because "I'm not seeing any prejudice to your client in any way, shape, or form." *Id.* at 7-8, 19.

We review the denial of a motion for a mistrial for an abuse of discretion. ***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." *Id.* (quoting ***Commonwealth v. Wright***, 961 A.2d 119, 142 (Pa. 2008)). "A trial court should grant a motion for mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect

is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Bryant**, 67 A.3d 716, 728 (Pa. 2013) (citing **Chamberlain**, 30 A.3d at 422).

Here, the court did not abuse its discretion by denying Lee's motion for a mistrial. We agree with the trial court that the Commonwealth's violation of the order did not prejudice Lee. The Commonwealth stated that the expert was not able to do anything with the phone because there was a password lock on the phone, and Lee has not suggested that the Commonwealth's actions changed any evidence in any material way. As such, the record does not indicate that the Commonwealth's violation of the order had "the unavoidable effect" of rendering the jury unable to weigh the evidence and render a true verdict. **Bryant**, 657 A.3d at 728. This claim fails.

**COMMONWEALTH'S CLOSING ARGUMENT**

Lee maintains that the trial court erred in "permitting the Commonwealth to argue and erroneously inform the jury to consider evidence and acts not charged against [Lee] at trial." Lee's Br. at 14. He argues that "the prosecution instructed the jury to consider during deliberations, the paraphernalia that was located inside of the target residence, in spite of the fact that the paraphernalia was not compatible with the drugs [Lee] was charged with transferring and [Lee] was not charged with possessing drug paraphernalia." **Id.** at 14.

In its closing argument, the Commonwealth mentioned examples of drug paraphernalia found inside the home the CI entered to purchase drugs:

"Intentional possession with controlled substance, that possessing alprazolam without a prescription, that he shouldn't have possession of drug paraphernalia. That's things like pill bottles, small packets and scales. All the things recovered. In this case, the paraphernalia that's used to sell the drugs." N.T., 4/11/17, at 121. Lee objected at the close of the prosecutor's argument.

"In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence." *Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. 2014). We will only reverse where the "unavoidable effect" of the prosecutor's comments "is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Id.* (citing *Bryant*, 67 A.3d at 727).

Contrary to Lee's claim, Lee was on trial for possession of drug paraphernalia, though the jury found him not guilty. *See* Verdict Report. The Commonwealth thus introduced evidence of drug paraphernalia obtained from the house where some of the drug transactions occurred. This evidence included two pill bottles, two blue bottles, one clear bag containing 35 clear Ziploc packets containing alleged marijuana, and six clear plastic bags containing a bulk of marijuana. N.T., 4/7/17, at 73-74. The Commonwealth was therefore entitled to make arguments that the evidence supported a conviction on possession of paraphernalia. *See Arrington*, 86 A.3d at 853.

**QUESTIONING OF COMMONWEALTH WITNESS**

Lee maintains that the trial court "erred . . . by structuring the Commonwealth's witness's testimony." Lee's Br. at 16. At trial, the Commonwealth called Special Agent Patrick Mangle, "the regional agent in charge of the attorney general's gun violence task force here in Philadelphia," as a witness. ***See*** N.T., 4/7/17, at 157,158. Agent Mangle testified that "[a] handgun can only be sold by a federally licensed firearms dealer." ***Id.*** at 164. The Commonwealth then asked Agent Mangle if he had checked to see if Lee was a federally licensed dealer, and he responded that he had not. ***Id.*** at 165.

The Commonwealth did not ask him any further questions at that time regarding this issue. During the Commonwealth's redirect, the court inquired whether it was correct that the gun was not traced back to Lee, to which Agent Mangle responded, "That's correct[.]" ***Id.*** at. 197-98. The court then called a sidebar and expressed concern that the Commonwealth's question about whether Agent Mangle checked to see if Lee was a licensed firearm dealer left the jury "open with the possibility that [Lee] could be a registered dealer." ***Id.*** at 200. The court suggested that the parties stipulate that Lee was not a licensed firearms dealer. When the parties could not agree to a stipulation, the court decided to allow the Commonwealth to recall Agent Mangle to ask limited questions regarding why he did not check Lee's dealer status.

> THE COURT: Now, you sir, I need you, [ADA], to speak to Agent Mangle, and to tell him that your questions are going to be along the lines as follows:

Agent Mangle, on Friday, I asked you if you had checked the dealer book to see if [Lee] was an eligible person—was a firearms dealer. You said you did not. Why didn't you?

I'm going to presume that the answer is going to be, because I was aware of information regarding Mr. Lee. I guess it might as well be Mr. Pressley, as well.

[ADA]: It's correct, they are both ineligible.

THE COURT: Okay. Fine. That both of these individuals were not eligible to possess, transfer firearms, and that they were not eligible to be dealers of firearms.

Now I don't know if you also asked him to crosscheck the book in the interim. You may ask that, if he did, but in that sense, he doesn't refer or state why he's ineligible.

Do you understand the parameters?

[ADA]: I do.

[Defense Counsel]: Just note my objection for the record.

N.T., 4/10/17, at 66-67.

The Commonwealth then questioned Agent Mangle as follows:

Q [ADA]: Agent Mangle, Friday I asked you if you knew [i]f Mr. Lee or Mr. Pressley were federally licensed firearms dealer. You had checked the book that's kept, to determine whether at the time of the transfer if they were, and you said that you had not checked. Why hadn't you checked that book?

A: Because I had information that both, Mr. Lee and Mr. Pressley were unable to possess or transfer a firearm, and therefore could not be a federally licensed firearms dealer.

*Id.* at 68-69.

Based on the above, Lee claims "[t]he [c]ourt's willingness to specifically instruct a witness' testimony showed an extreme bias and this prejudiced [Lee]." *Id.* at 18. A trial judge has the inherent right to question witnesses to

- 12 -

clarify existing facts and to elicit new information. ***Commonwealth v. Hogentogler***, 53 A.3d 866, 880 (Pa.Super. 2012) (quoting ***Commonwealth v. Folino***, 439 A.2d 145, 148 (Pa.Super. 1981)). A trial judge may under proper circumstances even recall a witness "to supply an omission of proof on a material point." ***Commonwealth v. Britton***, 482 A.2d 1294, 1297 (Pa.Super. 1984) (quoting ***Commonwealth v. Myma***, 123 A. 486, 487 (Pa. 1924)). However, a judge must be careful not to engage in conduct that gives the appearance of prejudice or bias or that in effect amounts to acting as an advocate for a party. ***See Commonwealth v. Archambault***, 290 A.2d 72, 76 (Pa. 1972).

To the extent the trial court's directions to the Commonwealth are questionable, this issue affords Lee no relief because he cannot show prejudice. Lee has at most shown harmless error as the jury found him not guilty of the firearms charges. ***See*** Verdict Report.

**MOTION *IN LIMINE***

Lee next argues that the court erred in denying his motion *in limine* to preclude hearsay testimony from an officer. Lee's Br. at 2. He fails to develop or mention this issue in the argument section of his brief and therefore he has waived review of this claim. ***Puksar***, 951 A.2d at 293.

**JURY INSTRUCTION – CONSTRUCTIVE POSSESSION**

Lee argues, "the jury was erroneously given the charge of constructive possession which gravely prejudiced [Lee]." Lee's Br. at 13. He maintains that the trial court should not have given a constructive possession instruction

because "[Lee] was not on trial for any of the drugs or guns found inside of the target residence nor was he tried for criminal conspiracy." ***Id.*** Lee maintains that the trial court also committed error when it "instruct[ed] the [j]ury to consider evidence of items and evidence of charges that were dismissed at the preliminary hearing during deliberation." ***Id.*** at 2.

Lee argued at trial that constructive possession was not applicable because "all of the drugs that were recovered from inside the house, again, were dismissed as to this defendant." N.T., 4/11/17, at 135. The trial court ruled the evidence warranted an instruction on constructive possession:

> [The jury] may consider the constructive possession of the items found within the home on August 7th, pursuant to the search warrant when they decide whether or not he either delivered or possessed with the intent to deliver controlled substances on July 22nd, July 23rd, and August 5th, because that is circumstantial and additional evidence for them to consider, where or not he did, A.
>
> To decide whether or not he did this delivery or possessed with the intent to deliver on - - let's start with day one, okay?
>
> Day one, the jury may consider, day one, day two, day three, day four, day five, day six and day seven. All the dates that were introduced, because each day gives this jury evidence directly and circumstantially of whether or not Mr. Lee delivered controlled substances on day one.
>
> Then they go to day two. They may consider, to identify whether or not that charge has been proven beyond a reasonable day one, day two, day three, day four, and frankly, that's exactly what I'm going to tell them.
>
> They can consider whatever they want to consider. That's not for me to tell them what they should consider.

They are here to decide the facts, to decide the facts in this case.

They may consider all the evidence that they believe to be material to the charge at issue.

They must decide each charge separately, but that is their purview to decide whether or not evidence from over here applies over here. Okay.

N.T., 4/11/17, at 134-37.

The court then instructed the jury on constructive possession:

Now, a person can be guilty of possessing an item even when he's not holding it, touching it, or if it's even in the same area as the item.

This type of possession is what the law calls constructive possession.

For there to be constructive possession, it must be proven beyond a reasonable doubt that the individual had both the intent to control and the power to control the item.

In determining whether or not [Lee] had possession of a controlled substance, you should consider evidence of all the facts and circumstances that may shed light on the question of whether [Lee] had that intent to control and the power to control that substance.

N.T., 4/12/17, at 38-39.

Our standard of review to a challenge to a jury instruction is as follows:

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

- 15 -

*Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009) (citations omitted). "The trial court properly gives a jury instruction if there is an evidentiary basis on which the jury could find the element, offense, or defense that is the subject of the instruction." *Commonwealth v. Hall*, 199 A.3d 954, 963 (Pa.Super. 2018).

In the context of the charge of PWID, "[i]f the contraband is not found on the appellant's person, the Commonwealth must prove that the appellant had constructive possession of the contraband, which has been defined as the 'ability and intent to exercise control over the substance.'" *Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa.Super. 2011) (citing *Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa.Super. 2008)).

Here, the evidence at trial put into issue whether Lee had the "ability and intent to exercise control over the substance[s]" recovered in the residence. The Commonwealth presented evidence that officers recovered Xanax, marijuana, and drug paraphernalia from the house they observed Lee exiting and entering during the controlled buys. N.T., 4/5/17, at 79, 100-01, 117-18. Following one of the buys, the CI gave the officers Xanax pills and marijuana. *Id.* at 84, 120. Officers also recovered from Lee a key to the house. N.T., 4/6/17, at 17-18, 122-23. The evidence thus raised a question of whether he had constructive possession of any or all of the items and the trial court properly instructed on constructive possession. The court also did not err in instructing the jury that it could consider all evidence introduced at trial because the evidence was relevant to proving the PWID charge as officers did

not recover narcotics from Lee's person. Furthermore, though Lee is correct that the charges against him for the drugs inside of the house were dismissed at the preliminary hearing, he did not file a motion in *limine* to exclude this information or even object when the Commonwealth introduced the evidence at trial. No relief is due.

## BATSON CHALLENGE[4]

Lee also claims that the trial court erred "by sustaining an unwarranted ***Batson*** challenge by the Commonwealth; and denying same as to [Lee]." Lee's Br. at 2. He fails to develop or mention this issue in the argument section of his brief and therefore he has waived review of this claim. ***Puksar***, 951 A.2d at 293.

## JURY QUESTION

Last, Lee argues that the trial court erred "by refusing to answer the [j]ury's question during deliberations as to whether [Lee's] key worked the front door of the target residence." Lee's Br. at 3. He fails to develop or mention this issue in the argument section of his brief and therefore he has waived review of this claim. ***Puksar***, 951 A.2d at 293.

Judgment of sentence affirmed.

---

[4] ***Batson v. Kentucky***, 476 U.S. 79 (1986).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/3/20